BENTON MURPHIN *vs.* JOSIAH B. SCOVELL.

November 26, 1890.

Parties to Actions.—A person in whose name a contract is made for the benefit of another may sue on it in his own name. Gen. St. 1878, c. 66, § 28.

Verdict—Evidence.—Evidence considered, and *held* not to justify the verdict.

Appeal by plaintiff from an order of the district court for St. Louis county, *Stearns,* J., presiding, refusing a new trial after a verdict for defendant.

*H. J. Horn* and *W. W. Billson,* for appellant.

*White, Reynolds & Schmidt,* for respondent.

MITCHELL, J. The nature of this action, and the history of the transaction out of which it grew, will sufficiently appear from the report on a former appeal, (41 Minn. 262, 43 N. W. Rep. 1,) although some of the pleadings have been since amended, and the evidence on the last trial is on some points somewhat different from that on the first trial. The contract declared on was made in the name of plaintiff, but for the benefit of one Banning. The statute provides that in such a case the action may be prosecuted by the party in whose name the contract is made. Gen. St. 1878, c. 66, § 28; *Cremer* v. *Wimmer,* 40 Minn. 511, (42 N. W. Rep. 467.) It stands as an established fact in the case that defendant was in default on his contract, being unable, by reason of an outstanding mortgage, to give good title to the premises in question, when plaintiff tendered performance, and demanded a deed. Therefore it follows that plaintiff was entitled to recover back whatever purchase-money had been paid on the con-

tract. The verdict was for defendant, and the question is whether it was justified by the evidence.

An examination of the record satisfies us that, while there is a seeming conflict in the testimony, this is apparent and not real, not being upon any point that is material, or that at all goes to the legal effect of the evidence. It appears that defendant agreed with Banning that, if the latter would effect a sale of the premises described in the complaint for $20,000, he would allow him $500 commission. Thereupon Banning got up an association, called the "McNair Syndicate," of which he himself was a member, to purchase the property, which was effected, and a contract executed by defendant, February 26, 1887, to McNair, as the representative of the syndicate, in which the receipt of $2,000 earnest-money is acknowledged by defendant, and by the terms of which he agreed that at McNair's request at any time on or before March 22, 1887, he would execute to him, *or to such person or persons as he might direct,* a warranty deed. McNair was to pay $4,666.66 more of the purchase-money on delivery of the deed, and the balance in two equal payments in one and two years, respectively, with interest at 8 per cent., secured by mortgage on the premises. Banning paid over to defendant $1,500, the remainder of the $2,000 the receipt of which is acknowledged in the contract being the $500 commission to which Banning was entitled. At this point occurs the conflict referred to between the testimony of Banning and plaintiff on the one side, and that of defendant on the other. All agree that $2,000 on the purchase-money was paid by Banning to defendant on March 22, 1887, and it is the undisputed evidence that this was Banning's own money. Plaintiff and Banning swear that on this date, it being suggested that McNair or the McNair syndicate would not be prepared to fulfil the terms of the contract, and defendant being willing to convey to any one else, provided he got his money, the "Murphin contract" was executed, by which defendant agreed to convey to Murphin for the same price, ($20,000,) the times of payment being extended however, and that the $2,000 was then and there paid by Banning upon the new contract, and that it was further expressly agreed that Banning should refund to McNair the $1,500 paid in February on the

first contract, which he has since done, these two amounts and Banning's commission making up the $4,000, the receipt of which is acknowledged in the Murphin contract. On the other hand, defendant testifies that the $2,000, paid March 22d, was paid on the McNair contract, which was then extended for 30 days from that date, and that the Murphin contract, although dated March 22d, was not executed until in April, about the time of the expiration of the extension of the McNair contract, and that nothing was said about plaintiff or Banning refunding the $1,500 to McNair, and that there was no understanding or agreement to that effect. He does admit, however, the receipt, in all, of $3,500 cash, which he still retains, and that this, with $500, Banning's commission, constitutes the $4,000, the receipt of which he acknowledges in the Murphin contract as part of the purchase-money on that contract. It also appears that at the time of the execution of the Murphin contract, (whether it was in March or April,) the McNair contract was still in force, the defendant never having tendered a deed under it, or being in a position to perform on his own part, because of the outstanding incumbrance on the property. When asked why he gave a contract to convey to Murphin with the McNair contract still outstanding, defendant replied, because Banning told him that McNair would not take the property, and asked him if he would be willing to deed to any one else, when he (defendant) told him that he would, and thereupon the Murphin contract was executed. He also admits that he was told that McNair had not a dollar in the property, but that it was Banning's money that had been paid, and that he supposed this was so when he executed the Murphin contract. Again, when asked why he agreed to sell to Murphin for $16,000 if there was no agreement or understanding that Banning was to reimburse McNair, defendant replied: "I wasn't selling to Murphin for $16,000; was selling it to Murphin for $20,000, of which that $4,000 I had received was part-payment." Then, when asked if his understanding was that the $4,000 already received was to be applied as part-payment on the Murphin contract, his answer was: "I have never disputed it." Also, when asked if he thought it safe to execute a contract to another party without settling with McNair and getting the old contract

back, he replied, "I trusted that wholly to my agents, who were selling my property," evidently referring to Banning and Murphin. From this and other evidence in the case it is perfectly apparent that, in executing and accepting the Murphin contract, the parties did not proceed upon the idea that the McNair contract had been forfeited or in any way terminated, and that a new and independent sale of the property was being made, but that Banning was assuming the obligations of the McNair contract, with certain agreed changes, and taking it off McNair's hands, and was to have the benefit of all payments already made on the property. All that defendant wanted or expected, as he virtually admits, was "his money" out of the land. All the disagreement there is in the evidence is as to whether the $2,000, paid by Banning March 22d, (and which was confessedly his own money,) was in the first instance paid on the McNair contract, and afterwards applied on the Murphin contract, or originally paid on the latter, and as to whether there was any express agreement that Banning should refund the $1,500 to McNair. But, as we view it, these questions are wholly immaterial; and whichever way they are answered would not alter the legal effect of the conceded facts. Defendant could not, as a matter of course, convey perfect title to Murphin, unless the McNair contract was first gotten out of the way, or McNair directed the conveyance to be made to Murphin.

Assuming, therefore, that the $1,500 had been paid by McNair, and that defendant was responsible to him for it, Murphin, by accepting the benefit of it by the application of it as a payment on his contract, under the circumstances, by clear implication and in the absence of any express promise obligated himself to assume the liability, if any, of defendant to McNair, and to reimburse McNair so as to get his contract out of the way; and the fact that defendant consented to apply these payments on the Murphin contract implied a request on his part that Murphin, or Banning for whose benefit the contract was made, should repay McNair. The same would be true as to the $2,000, except that, having been Banning's own money, voluntarily advanced for McNair, according to defendant's version of the transaction, no repayment to McNair was required. The result is that, in our opinion, even on defendant's own showing, plaintiff

was entitled, as a matter of law, to recover the $3,500, and consequently the verdict for defendant was not justified by the evidence. There are some things about this transaction, which can be partially read between the lines, that might disincline us to disturb this verdict if it could properly be avoided, but we cannot see how it can possibly be sustained.

Order reversed.