WILLIAM STRUCKMEYER v. W. L. LAMB.[1]

January 31, 1896.

Nos. 9835—(294).

**Parties—Trustee of Express Trust.**

L., being the owner of certain notes and chattel mortgages executed by J., assigned them, in absolute terms, to S., for the purpose of enabling him, by action thereon, to compel J. to pay a debt owing by him to S. If the proceeds were collected, they were to be turned over to L. *Held* that, for such purpose, S. was a trustee of an express trust, and might maintain an action in his own name.

**Attorney and Client—Fraudulent Representations.**

L. was also the attorney for S. in the whole proceedings, and induced him, by fraudulent representations, to take the assignment of the instruments and bring suit thereon; stating that they were valid and free from any infirmity, and that if S. would bring suit upon them against J., and was thereby put to costs and expenses, he would pay the same to S. The notes and mortgages were in fact usurious and invalid, and, upon suit brought against J. thereon, S. was defeated, and compelled to pay $294.95 costs and expenses. *Held,* that L. was liable to S. for the amount of the costs and expenses so paid by him.

**Complaint Construed.**

Certain allegations in the complaint construed as constituting only one cause of action.

Appeal by defendant from an order of the district court for Martin county, Severance, J., overruling a demurrer to the complaint. Affirmed.

*Voreis & Mathwig,* for appellant.
*T. S. Fisk* and *H. H. Dunn,* for respondent.

BUCK, J. The complaint in this action is quite lengthy, and the facts cannot be stated briefly. The appeal is from an order overruling the defendant's demurrer to the complaint.

The material facts are admitted by the demurrer. The defendant Lamb is a practicing attorney at Fairmont, in the county of Martin, in this state. It appears that in March, 1894, one Jonker was indebted to Louisa Reiss in the sum of about $150, and to de-

fendant in the sum of about $50, and the defendant induced Jonker
to execute, as evidence and security for such indebtedness, two
promissory notes,—one for $200, due November 1, 1894, and one for
$48.65 due September 1, 1894,—each note drawing interest at the
rate of 10 per cent. per annum; by the express terms thereof; and,
to secure the same, Jonker executed a chattel mortgage upon a
large amount of personal property, and the defendant received, re-
tained, and took $20 usurious interest, which was included in said
notes and mortgage. For some unexplained reason, the defendant
took both notes and the chattel mortgage in the name of Louisa
Reiss. After the execution of the chattel mortgage, Lamb, without
the knowledge and consent of Jonker, wrongfully altered and
changed the chattel mortgage by inserting therein a description of
a large quantity of crops and farming machinery; and, by reason
of the alteration of said mortgage and the usury in the notes, they
are alleged in the complaint to be invalid and void. Subsequent
to the execution of the notes and mortgages, and on April 7, 1894,
the defendant also held a note of $14 against said Jonker, which
was given for usurious interest, and on said day the defendant loaned
to Jonker the sum of $5, and, to secure this loan and the usurious
note of $14, Jonker executed and delivered to defendant a note and
chattel mortgage which were usurious, although apparently valid
upon their face, due November 1, 1894, which mortgage covered a
large portion of the personal property described in the prior chat-
tel mortgage, which Jonker had executed to Louisa Reiss. When
Louisa Reiss learned of the infirmity and illegality of the notes and
chattel mortgage executed to her in her name, which was about
August 1, 1894, she repudiated the transaction and refused to hold
the security, and refused to attempt to enforce collection of the
same; and thereupon the defendant, Lamb, who had been her agent
during all this time, agreed with her to assume her interest in said
notes, and collect the same.

On August 10, 1894, Jonker was also indebted to this plaintiff
in the sum of $89.95, he (Jonker) being then insolvent, and could not
pay, and refused to pay, the same to plaintiff. On the last-named
day, and while Jonker was so indebted to plaintiff, this defendant,
Lamb, who was the attorney and counselor of plaintiff, having
learned of such indebtedness from Jonker to the plaintiff, ap-

proached him, and represented to him that, if he would take and purchase the said notes and chattel mortgages which defendant had so obtained from Jonker, he would be compelled to pay them to plaintiff. Defendant at the same time, and as part of said transaction, represented to plaintiff that said notes and chattel mortgages were good, legal, and valid obligations, and free from any infirmities, all of which plaintiff believed and relied upon. It was also further agreed between them that plaintiff should prosecute in his own name an action for the recovery of the amount of said notes and mortgages; and the defendant, Lamb, then agreed, if plaintiff would do so, he (Lamb) would pay all costs, expenses, and outlays which plaintiff might be obliged to pay, incur, or become liable for by reason of prosecuting or enforcing the collection of said notes and mortgages, and to pay plaintiff all costs and expenses which might be incurred by reason of any suits or other procedure. Thereafter, on September 1, 1894, the defendant duly assigned to plaintiff the said notes and mortgage of $27.75, and also procured from Louisa Reiss a transfer and assignment, in due form, of all her interest in said notes and chattel mortgage, and also, in due form, assigned to plaintiff all of the defendant's share and interest therein. When one of said notes secured by mortgage to Louisa Reiss became due, this plaintiff sought to enforce its collection; and, upon refusal of Jonker to deliver up the mortgaged property, plaintiff brought an action against him for recovery of the property, the defendant acting as plaintiff's attorney throughout the proceedings. Upon trial a verdict resulted in favor of the defendant, and against plaintiff, for the return of all of the property taken and replevied in said action of claim and delivery, and, in case a return thereof could not be had, the value of the property, assessed at $628.46; and plaintiff, being then unable to return the property, paid the judgment and interest thereon in full. In the prosecution of these legal proceedings by the plaintiff against Jonker, he was necessarily compelled to pay out costs and expenses to the amount of $294.95, which proceedings were, to a great extent, for the defendant's benefit and at his request, and which costs and expenses he refuses to pay.

If all of the facts stated in the complaint and admitted by the defendant's demurrer, are true, then it is very mild criticism upon the

defendant's conduct as an attorney to say that the complaint states a good cause of action against him for damages.   The law requires absolute good faith upon the part of an attorney towards his client. "He must not be guilty of fraud or deception, to the injury of his client, nor put his client to unnecessary expense." Weeks, Attys. at Law, § 259.   Public policy, as well as the protection of private rights, demands that the attorney shall not mislead, deceive, defraud, or betray the confiding client.   The relation is confidential, and its betrayal by fraudulent acts, resulting in damages to the client, constitutes a cause of action against the attorney.

The defendant contends that the plaintiff, by the contract to commence the suit which is pleaded in the complaint, is estopped to maintain an action thereon, because it was contrary to the statute, and against public policy, and involved misrepresentation, deceit, and perjury.   We think this contention on the part of the defendant has but little merit, because, if there were any such public offenses involved in the transactions, they were induced by the acts of the defendant himself, while the complaint alleges that the plaintiff was innocent of any fraudulent intent, and commenced the suit against Jonker upon the representations of defendant "that if plaintiff would take and purchase of defendant the aforesaid notes and mortgages, and hold the same for collection against the said John Jonker, then and in that event the said John Jonker would be obliged to and could be compelled to pay the aforesaid indebtedness of said John Jonker to this plaintiff."

It is evident, therefore, that plaintiff was to purchase and take an assignment of the notes and mortgages as security for the collection or payment of what Jonker owed him.   Upon this condition he made the purchase and took the assignment, and although the proceeds, upon collection by suit, were to be turned over to defendant, yet this transaction would constitute plaintiff a trustee of an express trust, and he could bring suit in his own name upon the assigned instrument.   Lake v. Albert, 37 Minn. 453, 35 N. W. 177; Cremer v. Wimmer, 40 Minn. 511, 42 N. W. 467; Murphin v. Scovell, 44 Minn. 530, 47 N. W. 256.   But, if the plaintiff was not a trustee of an express trust, then he had a right to bring suit in his own name, as the party in legal interest.   The defendant, as the owner of the notes and mortgages, executed, in absolute terms, an

assignment of them to the plaintiff, and the plaintiff was to bring suit thereon for his own benefit, as well as for the benefit of the defendant; and this gave him a legal interest therein, and he could maintain an action thereon in his own name, although there was a verbal agreement between the parties that the plaintiff, upon its collection, should turn it over to the defendant. Anderson v. Reardon, 46 Minn. 185, 48 N. W. 777.

There is but one cause of action stated in the complaint, and, as the demurrer conceded the good faith of the plaintiff upon all of the facts stated, the order of the trial court overruling the demurrer to the complaint is affirmed.